# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF KENTUCKY (at Covington)

| | |
|---|---|
| THEODORE JOSEPH ROBERTS<br>c/o Christopher Wiest, Esq.<br>25 Town Center Blvd, STE 104<br>Crestview Hills, KY 41017 | :<br>:<br>: |
| AND | : |
| KISHA ROBERTS<br>c/o Christopher Wiest, Esq.<br>25 Town Center Blvd, STE 104<br>Crestview Hills, KY 41017 | :<br>:<br>: |
| AND | : |
| BRIANNA ROBERTS<br>c/o Christopher Wiest, Esq.<br>25 Town Center Blvd, STE 104<br>Crestview Hills, KY 41017 | :<br>:<br>: |
| AND | : |
| RANDALL DANIEL<br>c/o Christopher Wiest, Esq.<br>25 Town Center Blvd, STE 104<br>Crestview Hills, KY 41017 | :<br>:<br>: |
| AND | : |
| SALLY O'BOYLE<br>c/o Christopher Wiest, Esq.<br>25 Town Center Blvd, STE 104<br>Crestview Hills, KY 41017 | :<br>:<br>: |
| On behalf of themselves and<br>All others similarly situated | :<br>: |
| PLAINTIFFS | : |
| v. | : |
| HON. ROBERT NEACE<br>2970 Union Square<br>Burlington, KY 41005 | :<br>: |

| | |
|---|---|
| In His Official Capacity Only as Boone Co. Attorney | : |
| | : |
| On behalf of himself and all other County Attorneys | : |
| AND | |
| | : |
| HON. ANDREW BESHEAR 700 Capitol Avenue, Suite 100 Frankfort, KY 40601 In His Official Capacity Only | : |
| | : |
| AND | : |
| | |
| ERIC FRIEDLANDER 275 E. Main Street, 5W-A Frankfort, KY 40621 In His Official Capacity Only | : |
| | : |
| | : |
| DEFENDANTS | : |

# VERIFIED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR CONSTITUTIONAL VIOLATIONS

Plaintiffs Theodore Joseph Roberts ("TJ"), Kisha Roberts ("Kisha"), Brianna Roberts ("Brianna"), Randall Daniel ("Randall"), and Sally O'Boyle ("Sally") (collectively "Plaintiffs"), for their Verified Class Action Complaint *for Declaratory and Injunctive Relief* (the "Complaint"), state and allege as follows:

## INTRODUCTION

1. This action involves the deprivation of Plaintiffs' First, Fifth, and Fourteenth Amendment rights, as well as the rights set forth in Article IV of the Constitution regarding privileges and immunities, by the official capacity Defendants named herein. This action involves the response actions by the official capacity Defendants herein to COVID-19 ( the disease caused by the Coronavirus). Admittedly, COVID-19 presents a serious threat to public health and, equally admittedly, Defendants have a degree of discretion available to them to

2

deal with this public health threat. Those tools, however, are not limitless. As the facts and circumstances in this Complaint reveal, Defendants have gone too far, and beyond the limits the Constitution permits.

2. Notably, of course, in times of public panic and fear, egregious violations of fundamental rights have been permitted throughout the history of this Country. *Korematsu v. United States*, 323 U.S. 214 (1944). Typically, it is only well after the fact that we have recognized the error of doing so. *Trump v. Hawaii*, 138 S.Ct. 2392 (2018).

## PARTIES

3. Theodore Joseph Roberts ("TJ") is a recent college graduate who has pursued work, both paid and unpaid in the political arena. He is a devout Christian, and until the recent COVID-19 outbreak, was a regular and frequent attendee at church, typically attending between once a week to several times a week. He has sincerely held religious beliefs that in person attendance at church is central to his faith. His official residence is at an apartment located in Burlington, KY 41005, in Boone County, Kentucky, where he is registered to vote and where his vehicle is registered to. Nevertheless, until December, 2019, he stayed in the dormitories at Transylvania University. After that, and to the present, he has stayed with his grandparents at an address at East Bend Road, in Burlington, Kentucky, also in Boone County, Kentucky.

4. Kisha Roberts is the mother of TJ, and Brianna Roberts is the sister of TJ, and both of them reside and stay at the same apartment where TJ's vehicle is registered to and where he is registered to vote, in Burlington, KY 41005, in Boone County, Kentucky.

5. Randall Daniel resides in Shepherdsville, Kentucky, in Bullitt County, County. He has sincerely held religious beliefs that in person attendance at church is central to his faith.

Until the recent COVID-19 outbreak, he was a regular and frequent attendee at church, typically attending every Sunday.

6. Sally O'Boyle resides in Morehead, KY 40351, in Rowan County, Kentucky. She has sincerely held religious beliefs that in person attendance at church is central to her faith. Until the recent COVID-19 outbreak, she was a regular and frequent attendee at church, typically attending every Sunday.

7. Defendant Hon. Robert Neace is the duly elected Boone County Attorney, who is duly authorized to bring and file misdemeanor cases in and for Boone County Kentucky. He is sued in his official capacity only, and is sued in a representative official capacity under FRCP 23 for all other county attorneys in the Commonwealth of Kentucky.

8. Defendant Hon. Andrew Beshear is the duly elected Governor of Kentucky. He is also sued in his official capacity only.

9. Defendant Eric Friedlander is the acting Secretary of the Cabinet for Health and Family Services, and is also sued in his official capacity only.

10. Among other things, Defendants enforce and are charged with the enforcement or administration of Kentucky's laws under KRS 39A, and KRS 220, including the orders and actions complained of herein.

## JURISDICTION AND VENUE

11. Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this action is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. § 1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

12. Venue in this District and division is proper pursuant to 28 U.S.C. §1391 and other applicable law, because much of the deprivations of Plaintiffs' Constitutional Rights

occurred in counties within this District within Kentucky, and future deprivations of their Constitutional Rights are threatened and likely to occur in this District.

## Additional Allegations Concerning Standing

13. Defendants are empowered, charged with, and authorized to enforce and carry out Kentucky's emergency power laws and health related laws under K.R.S. 39A and KRS Chapter 220.  Moreover, Defendants actually do enforce and administer these laws.

## FACTS COMMON TO ALL CLAIMS

### Background on Kentucky's Responses to COVID-19 to date

14. On March 6, 2020, Governor Andrew Beshear issued a state of emergency Executive Order 2020-215.  Among other things, this Order declared an emergency for COVID-19 in and for Kentucky.  **See Exhibit A**, hereto.

15. Throughout March, 2020, the Governor and/or his designees issued a number of recommendations to persons and businesses that are not challenged in this action concerning COVID-19.

16. On March 16, 2020, in response to COVID-19, the Governor and/or his designees limited restaurants to carry-out or pickup or delivery service only.  **See Exhibit B**, hereto.

17. On March 17, 2020, in response to COVID-19, the Governor and/or his designees shut down certain businesses that involved public congregation, while leaving open a number of other businesses deemed "essential".  **See Exhibit C**, hereto.  These "essential" businesses that were permitted to remain open included industrial manufacturing, construction, retail, consumer goods, gas stations, and hotels.

18. On March 19, 2020, in response to COVID-19, the Governor and/or his designees prohibited some, but not all, public gatherings.  **See Exhibit D**, hereto.  On the one hand, the Order

provided that "[a]ll mass gatherings are hereby prohibited." "[m]ass gatherings" included "any event or convening that brings together groups of individuals, including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities." The order then exempted a number of activities from this definition. For the avoidance of doubt, a mass gathering does not include normal operations at airports, bus and train stations, medical facilities, libraries, shopping malls and centers, or other spaces where persons may be in transit. It also does not include typical office environments, factories, or retail or grocery stores where large numbers of people are present, but maintain appropriate social distancing.[1]

19. On March 22, 2020, the Governor and/or his designees shut down additional "non-life sustaining" retail establishments to in-person traffic, but left other "life sustaining" retail open. **See Exhibit E**, hereto.

20. On March 23, 2020, the Governor and/or his designees banned most[2] elective medical procedures. **See Exhibit F**, hereto.

21. On March 25, 2020, the Governor and/or his designees shut down additional businesses for in-person work, while leaving others open. **See Exhibit G**, hereto.

22. On March 30, 2020, the Governor and/or his designees banned out of state travel with four exceptions: (i) when required for employment; (ii) to obtain groceries, medicine, or other necessary supplies; (iii) to seek or obtain care by a licensed healthcare provider; (iv) to

---

[1] Yet another notable exception appears to be the Governor's own daily press conference, where reporters and members of the media gather daily in a "do as I say, not as I do" scenario.
[2] A notable exception, though it does not appear on the face of the Order itself, is the provision of abortion services by Kentucky's abortion providers. Witnesses have photographed the continued operation of these businesses throughout this crisis, unimpeded, often without social distancing, and in crowded conditions.

provide care for dependents or the elderly or other vulnerable persons; or (v) when required by court order.  **See Exhibit H**, hereto.

23. On April 2, 2020, the Governor and/or his designees expanded the Exhibit H Order, which places anyone coming from out of state, subject to exceptions, into quarantine.  **See Exhibit I**, hereto.  Collectively, Exhibits H and I are known as the "Travel Ban."

24. And on April 8, 2020, the Governor and/or his designees placed further restrictions on retail establishments that limited shopping to one adult per household (with exceptions such as for dependent children).  **See Exhibit J**, hereto.

25. Most of the aforementioned executive orders reference K.R.S. 39A and/or K.R.S. Chapter 214 as authority for their promulgation.

26. Both of those Chapters contain criminal penalties, such as K.R.S. 39A.990, establishing as a Class A misdemeanor any violations of orders issued under that Chapter, and K.R.S. 220.990, which generally provides as a Class B misdemeanor for any violations of orders under that Chapter.  K.R.S. 39A.190 gives police officers authority to "arrest without a warrant any person violating or attempting to violate in the officer's presence any order or administrative regulation made pursuant to" KRS Chapter 39A.[3]

<u>The Plaintiffs' Activities</u>

27. Plaintiffs reincorporate the preceding Paragraphs as if fully written herein.

28. On Sunday April 12, 2020, Easter Sunday, Plaintiffs TJ Roberts, Randall Daniel, and Sally O'Boyle attended Easter church service at Maryville Baptist Church, in Hillview, Bullitt County Kentucky.

---

[3] For the avoidance of all doubt, at this time, Plaintiffs are only challenging the prohibitions against in-person church services, and Plaintiff Roberts is challenging the Travel Ban.

29. They each did so pursuant to sincerely held religious beliefs that in-person church attendance was required, particularly on Easter Sunday.

30. Each ensured appropriate social distancing and took other measures appropriate for the circumstances in accordance with CDC Guidelines, while at the service.[4] Among other things, they each sat six feet away from other congregants at the service, wore masks covering their faces, and did not have personal contact with others attending.

31. At the time, there were between 11 and 50 persons in Bullitt County[5] with a COVID-19 diagnosis, out of a population of 81,676.[6] In other words, 0.06% of the population had a diagnosis.

32. At the time, no one attending the Maryville Baptist Church was diagnosed with COVID-19, including the Plaintiffs, and no evidence exists that anyone with COVID-19 was in attendance at any of the April 12, 2020 Easter services.

33. When Plaintiffs TJ Roberts, Randall Daniel, and Sally O'Boyle exited the service, they found on their windshield the following notice ("Quarantine and Prosecution Notice"), placed there by Kentucky State Troopers:

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/index.html (last visited 4/13/2020); https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/guidance-community-faith-organizations.html (last visited 4/13/2020).
[5] https://govstatus.egov.com/kycovid19 (last visited 4/13/2020)
[6] https://www.census.gov/quickfacts/fact/table/bullittcountykentucky,KY/PST045218 (last visited 4/13/2020).



34. In his evening briefings, the Governor made clear that he was going to target religious services for these notices, apart from other gatherings. Based on the activity of the Kentucky State Police on April 12, 2020, the Governor carried out his threat.

35. Kentucky State Police have solely been dispatched by the Governor, and those reporting to him and acting at his behest, to harass, charge, intimidate, and threaten the churchgoers from Maryville Baptist Church and other church services, and not to any other public gatherings, including, without limitation, the Governor's own public daily gathering where he gives his press release.

36. Among other things, the Quarantine and Prosecution Notice requires a self-quarantine of two weeks, and threatens criminal action against any vehicle owner whose vehicle was found at

9

the church, including each of the Plaintiffs, as well as Plaintiffs Kisha and Brianna Roberts, who are in the same household as TJ Roberts, but did not attend the church service on April 12, 2020, and have not physically interacted with TJ Roberts since March 6, 2020. It does so regardless of whether: (i) any Plaintiff has contracted the disease; (ii) there is any particular assessment of the likelihood of contracting the disease from the activity in question; and (iii) Plaintiffs took the safety precautions as described above so as to make their contracting the disease unlikely.

37. None of the Plaintiffs have displayed any symptoms of the COVID-19 disease, and, to the best of their knowledge, they do not have and have not contracted the COVID-19 disease.

38. All of the Plaintiffs refuse to self-quarantine as required by the Quarantine and Prosecution Notice, unless or until they have a diagnosis of them having contracted COVID-19, which none of them have.

39. Plaintiffs TJ Roberts, Randall Daniel, and Sally O'Boyle reasonably fear prosecution if they should attend further church services in light of the notice.

40. Further, all Plaintiffs fear prosecution and/or the equivalent of house arrest with quarantine, in light of the Quarantine and Prosecution Notice.

41. Absent the Travel Ban, Plaintiff TJ Roberts, who resides and lives in Boone County, would temporarily travel to Ohio, in contravention of the Travel Ban, to: (i) conduct unpaid volunteer work all while complying with social distancing requirements; (ii) recreate all while complying with social distancing requirements; (iii) associate with others in Ohio all while practicing social distancing requirements; (iv) to visit Mr. Bruns office for the purpose of pursuing this lawsuit; and (v) due to the proximity of Plaintiff to the border, take trips to Indiana and/or Ohio for a variety of purposes, including simply to drive through Indiana

and/or parts of Ohio to reach other locations in Kentucky, all while practicing social distancing requirements. All of the aforementioned activities are currently permitted under Ohio's and Indiana's COVID-19 response actions.

42. The Travel Ban, Quarantine and Prosecution Notice, and other executive orders issued by the Governor do not provide a process by which the individual Kentuckian will be notified if they are charged or accused of a violation of the orders, do not provide any mechanism to challenge or appeal any such determinations, and do not provide any process at all to challenge the facts and circumstances of such orders.

43. The Travel Ban, Quarantine and Prosecution Notice, and other executive orders issued by the Governor do not provide any right or opportunity for the individual Kentuckian to be heard if the individual is ordered to be quarantined, or detained, or otherwise punished for violating the Travel Ban. They also do not provide the individual Kentuckian with a right to be heard by a fair and independent tribunal if the citizen is ordered to be quarantined, or detained, or otherwise punished for violating the orders. The orders provide no right to appeal a quarantine, detention, or punishment or to appeal an order to quarantine pursuant to the orders.

44. The orders do not provide Kentuckians with the right to present evidence, the right to know the evidence opposing them, the right to cross-examine, the opportunity for counsel, or the right to have a record.

45. During the COVID-19 outbreak, Governor Beshear and the other Defendants have actively enforced the Governor's Executive Orders, including ordering sheriff's deputies to forcibly quarantine at least one Kentuckian who attempted to travel.

46. Upon information and belief, multiple Kentuckians in Louisville have been ordered to wear ankle monitors to ensure their government-imposed quarantine, even though they have not tested positive for COVID-19.

47. On the same day that the Governor instituted the Travel Ban, he also created the "COVID-19 Reporting Hotline" and requested that Kentuckians call it "for complaints about non-compliance with coronavirus mandates."

### The Fundamental Right To Travel

48. The United States Supreme Court held that the "constitutional right to travel from one State to another" is firmly embedded in this nation's jurisprudence. *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (*citing U.S. v. Guest*, 383 U.S.747, 757 (1966)).  In 1958, the United States Supreme Court found that "The right to travel is a part of the liberty of which the citizen cannot be deprived without due process of law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116, 125 (1958).  "The constitutional right of interstate travel is virtually unqualified." *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978) (citing United States v. Guest, 383 U.S. 745, 757-758 (1966); *Griffin v. Breckenridge*, 403 U.S. 88, 105-106 (1971)). "[T]he constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so, occupies a position fundamental to the concept of our Federal Union." *United States v. Guest*, 383 U.S. 745, 748 n.1 (1966).  "For all the great purposes for which the Federal government was formed, we are one people, with one common country. We are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States." Smith v. Turner, 48 U.S. 283, 492 (1849) (Taney, C.J., dissenting).

## The Freedom of Religion

49. The First Amendment protects the "free exercise" of religion, and fundamental to this protection is the right to gather and worship. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts ... [such as the] freedom of worship and assembly.").This protection was incorporated against the states in *Cantwell v. Connecticut*, 310 U.S. 296 (1940).  Because of this fundamental protection, "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993). The requirements to satisfy this scrutiny are so high that the government action will only survive this standard in rare cases and the government bears the burden of meeting this exceptionally demanding standard. Id.  "[T]he minimum requirement of neutrality is that a law not discriminate on its face." Id.at 533.

50. Defendants' prohibition of any in person church services, in the name of fighting Covid-19, is not generally applicable. There are numerous exceptions to the March 19, 2020 Order, such as an exception for factories, or attending establishments like shopping malls, where far more people come into closer contact with less oversight.

## Class Allegations

51. Plaintiffs reincorporate the preceding Paragraphs as if fully written herein.

52. The actions and violations herein complained of affect millions of Kentuckians.

53. Pursuant to FRCP 23(a), (i) the class is so numerous that joinder of all members is impracticable (with millions of potential Plaintiffs); (ii) there are questions of law or fact

-
-

common to the class; (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class.

54. Pursuant to FRCP 23(b): (i) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; and (ii) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

55. Plaintiffs seek both a Plaintiff class, consisting of those persons who desire to violate the prohibitions on gathering for in-person church service, but who would practice appropriate social distancing if permitted to do so, as well as those persons who desire to violate the travel ban, and a Defendant class consisting of the named Defendants and all other County Attorneys in Kentucky.

<u>Injunctive Relief</u>

56. Plaintiffs have and continue to have their fundamental constitutional rights violated by these official capacity Defendants, each of whom is personally involved with the enforcement and/or threatened enforcement of the challenged orders.  Plaintiffs will be irreparably harmed if injunctive relief is not issued.  Further, the public interest is served by the vindication of constitutional rights, and the weighing of harms warrants issuing injunctive relief.

**COUNT I – Violation of the First Amendment – Freedom of Religion (42 U.S.C. 1983)**

57. Plaintiffs reincorporate the preceding Paragraphs as if fully written herein.

58. The First Amendment of the Constitution protects the "free exercise" of religion. Fundamental to this protection is the right to gather and worship. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts...[such as the] freedom of worship and assembly."). The Free Exercise Clause was incorporated against the states in *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

59. As the Supreme Court has noted, "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc.v. Hialeah*, 508U.S. 520, 546 (1993).

60. Defendants have prohibited in-person religious services, have threatened criminal penalties for holding such services, and have thus substantially burdened Plaintiffs' religious exercise. "[T]he minimum requirement of neutrality is that a law not discriminate on its face." *Id.* at 533.

61. Defendants' restrictions have specifically and explicitly targeted in-person religious gatherings and are thus not neutral on their face.

62. Relatedly, government action is not generally applicable if its prohibitions substantially under-include non-religiously motivated conduct that might endanger the same governmental interest that the law is designed to protect. Id.at 542-46.

63. Defendants' prohibition of drive-in church services in the name of enforcing social distancing is not generally applicable. There are numerous exceptions to the orders that

15

Defendants are not cracking down on, such as establishments like retail stores for essential goods, factory work in critical sectors, and other examples, where far more people come into closer contact with less oversight.

64. Laws and government actions that burden religious practice and are either not neutral or not generally applicable must satisfy a compelling governmental interest and be narrowly tailored to achieve that end. *Id.* at 546.

65. Defendants' mandate is not "narrowly tailored" because the ban on in-person religious services is absolute, not accounting for services, like that attended by the Plaintiffs, where the CDC and Kentucky Cabinet guidelines are carefully adhered to, and thus satisfy the public health concerns to which the guidelines are directed.

66. Requiring Plaintiffs to abstain from religious gatherings, despite substantial modifications to satisfy the public health interests at stake, violates Plaintiffs' Constitutional right to free exercise of their religion.

67. By issuing and enforcing the orders banning in-person church service gatherings, Governor Beshear and the other Defendants, each acting under color of state law, are depriving and will continue to deprive Plaintiffs and other similarly situated Kentuckians of rights secured by the United States Constitution, including the First and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

**COUNT II – Violation of the Fundamental Right to Travel – (42 U.S.C. 1983) (Plaintiff TJ Roberts)**

68. Plaintiffs reincorporate the preceding Paragraphs as if fully written herein.

69. The Travel Bans violate the right to substantive due process as guaranteed by the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution in that the Travel Bans,

both on their face and as they would be applied to Plaintiffs, impinge upon the fundamental liberty interest in one's right to interstate travel. *See U.S. v. Guest*, 383 U.S. 747 (1966).

70. The right of adults to engage in interstate travel is a fundamental liberty interest. That right is one that is, objectively speaking, deeply rooted in this nation's history and tradition and one that is implicit in the concept of ordered liberty.

71. The Travel Bans are not narrowly tailored, nor are they the least restrictive means for advancing whatever governmental interest that the Defendants may clam the law advances.

72. The Travel Bans significantly hinder, if not deprive, many individuals from their ability and right to interstate travel.

73. The Travel Bans have and will cause a chilling effect on interstate travel.

74. By issuing and enforcing the Travel Bans, Governor Beshear and the other Defendants, each acting under color of state law, are depriving and will continue to deprive Plaintiffs and other similarly situated Kentuckians of rights secured by the United States Constitution, including Article IV, Section II, as well as the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

### COUNT III – Procedural Due Process – (42 U.S.C. 1983)

75. Plaintiffs reincorporate the preceding Paragraphs as if fully written herein.

76. "[T]here can be no doubt that at a minimum [procedural due process] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).

77. "A fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136 (1955).

78. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. Thus, in deciding what process constitutionally is due in various contexts, the Court repeatedly has emphasized that "procedural due process rules are shaped by the risk of error inherent in the truth-finding process...." *Carey v. Piphus*, 435 U.S. 247, 259 (1978) (citing Mathews v. Eldridge, 424 U.S. 319, 344 (1976)).

79. By issuing and enforcing the Travel Bans and other orders, without any process to appeal a determination or an order to quarantine, Governor Beshear and the other Defendants herein are depriving and will continue to deprive Plaintiffs and other similarly situated Kentuckians of the right to procedural due process secured by the Fifth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983, thereby causing them harm.

80. Plaintiffs are therefore entitled to a declaration of the unconstitutionality of the Travel Bans, both on their face and as applied, and injunctive relief prohibiting the enforcement of the Travel Bans.

<u>Generally</u>

81. Defendants abused the authority of their respective offices and, while acting under color of law and with knowledge of Plaintiffs' established rights, used their offices to violate Plaintiffs' Constitutional rights, privileges, or immunities secured by the Constitution and laws.

82. Thus, under 42 U.S.C 1983, Plaintiffs seek declaratory relief and injunctive relief.  Pursuant to 42 U.S.C. 1988, Plaintiffs further seek their reasonable attorney fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Defendants as prayed for, including:

A. That this Court issue a declaration that the challenged orders are unconstitutional.

B. That this Court enter permanent injunctive relief to prohibit enforcement of the challenged orders.

C. Certify a class as provided in the Complaint

D. That Plaintiffs be awarded their costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

E. Such other relief as this Court shall deem just and proper.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Thomas Bruns_____
Thomas Bruns (KBA 84985)
4750 Ashwood Drive, STE 200
Cincinnati, OH 45241
tbruns@bcvalaw.com
513-312-9890

/s/Robert A. Winter, Jr. _____
Robert A. Winter, Jr. (KBA #78230)
P.O. Box 175883
Fort Mitchell, KY 41017-5883
(859) 250-3337
robertawinterjr@gmail.co

**Attorneys for Plaintiffs**