**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

| | | |
|---|---|---|
| THEODORE JOSEPH ROBERTS, et. al. | : | Case No. 2:20-CV-00054-WOB |
| Plaintiffs | : | |
| v. | : | |
| ROBERT NEACE, et. al. | : | |
| Defendants | : | |

**DECLARATION OF THEODORE JOSEPH ROBERTS**

Pursuant to 28 U.S.C. §1746, the undersigned, Theodore Joseph Roberts, makes the following declaration, under penalty of perjury under the laws of the United States of America, that the facts contained herein are true and correct and based upon my personal knowledge:

1. My name is Theodore Joseph Roberts, and I am one of the Plaintiffs in this action. I reside in Boone County, Kentucky.

2. I am a practicing Christian with the sincerely held religious belief that in-person attendance at church is required by sacred Scripture, especially during Holy Week and culminating in the celebration of Easter. Numerous passages of sacred Scripture define my belief, including Hebrews 10:25, which urges that believers "not neglect[t] to meet together;" and Acts 2:42, which, for believers, requires devotion to the teachings of the Apostles and to communal fellowship and prayer. I regularly attend church service.

3. I have witnessed Governor Beshear's daily briefing to the press during the Coronavirus outbreak. I have witnessed more than 10 people gather *every day* in Frankfort for more than an hour (the Governor, his staff, and more than 10 reporters) and where it appears that people are closer than six feet together. I also witnessed his April 10, 2020 daily

1

briefing to the press.[1]  In it, he speaks about "mass gatherings" but then admits that he is talking about "less than seven churches" statewide.  He also admits that he has been "focused a lot on an individual church or pastor." (at the 35:44-39:35 mark).  He admits he is sending out enforcers to take and record the license plate number of church attendees and then will force those attendees to quarantine.  He quotes scripture that he says supports his position, and claims that other houses of worship believe the same dogma he does that in-person attendance at religious services is not required.  *Id.*  Governor Beshear likewise informs listeners that the prohibition on "mass gatherings" applies to "in-church" services.  *Id.* at 49:39-51:28.  Further, in response to a reporter's questions, he states that these enforcement activities apply only to the Easter weekend services and church services.  *Id.* at 1:08:00 to 1:08:07.

4. On Sunday April 12, 2020, Easter Sunday, I, along with Randall Daniel, and Sally O'Boyle and others, attended the church service at Maryville Baptist Church, in Hillview, Bullitt County, Kentucky.  I did so pursuant to my sincerely held religious belief that in-person church attendance was required, particularly on Easter Sunday.

5.  While at the service, Mr. Daniel, Ms. O'Boyle and I each followed appropriate social distancing and other measures in accordance with CDC Guidelines.[2]  Among other things, I sat at least six feet away from the other congregants at the service.  I wore a mask to this service, and so did Mr. Daniel and Ms. O'Boyle.  I did not have personal contact with any others attending.  The service was not crowded (I would estimate there

---

[1] https://www.youtube.com/watch?v=SJVDhu38S68&feature=youtu.be (last visited 4/16/2020).
[2] https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/index.html (last visited 4/13/2020); https://www.cdc.gov/coronavirus/2019-ncov/community/organizations/guidance-community-faith-organizations.html (last visited 4/13/2020).

were between forty and fifty people present, with a building capacity that was approximately three to four times that), leaving plenty of space for people to spread out, which they did.

6. Church leadership appeared to take the COVID issue seriously, in that they had the choir and other celebrants of the service spaced six feet apart, and it appeared that the church interior had been sanitized prior to the service.

7. It is my understanding that no member of the Maryville Baptist Church has been diagnosed with COVID-19. It is also my understanding that no one attending the Easter service has COVID-19. I have never received a diagnosis of COVID-19 and I have no symptoms that would concern me for such a diagnosis.

8. After Mr. Daniel, Ms. O'Boyle and I exited the service, we each found on our windshields the following notice ("Quarantine and Prosecution Notice"), placed there by Kentucky State Troopers:



3

9. In fact, that Quarantine and Prosecution Notice was placed on every car windshield in the parking lot.  It is my understanding from the state police that churches were the only group targeted by the Governor for enforcement.

10. Among other things, the Quarantine and Prosecution Notice requires a two week self-quarantine by, and threatens criminal prosecution of, any vehicle occupant and anyone in the occupant's household.   It does so regardless of whether: (i) any Plaintiff has contracted the disease; (ii) there is any particular assessment of the likelihood of contracting the disease from the activity in question; and (iii) any Plaintiffs took the CDC recommended safety precautions so as to make their contracting the disease unlikely.

11. I have not displayed any symptoms of the COVID-19 disease and, to the best of my knowledge, I do not have the COVID-19 disease.

12. Unless or until I have a diagnosis of COVID-19, which I do not have, or I have symptoms associated with it, I refuse to self-quarantine.

13. In light of the Quarantine and Prosecution Notice, I reasonably fear prosecution as a result of having attended church on Easter Sunday, and as a result of attending further church services as my faith requires of me.

14. I also fear prosecution, and/or the equivalent of house arrest with quarantine, in light of the same Quarantine and Prosecution Notice.

15. Absent the Governor's travel ban, I would temporarily travel to Ohio, in violation of the Travel Ban, to: (i) conduct unpaid volunteer work all while complying with social distancing requirements; (ii) recreate all while complying with social distancing requirements; (iii)  associate with others in Ohio all while practicing social distancing requirements; (iv)  visit Mr. Bruns' office for the purpose of pursuing this lawsuit all

4

while practicing social distancing requirements; and (v) due to my proximity to the state border, take trips to Indiana and/or Ohio for a variety of purposes, including simply to drive through Indiana and/or parts of Ohio in order to reach other locations in Kentucky, and all while practicing social distancing requirements.  All of these activities are currently permitted under Ohio's and Indiana's COVID-19 response actions.

16. The Travel Ban, Quarantine and Prosecution Notice, and other executive orders issued by the Governor, do not provide a process by which the individual Kentuckian will be notified if they are charged or accused of a violation of the orders, do not provide any mechanism to challenge or appeal any such determinations, and do not provide any process at all to challenge the facts and circumstances of such orders.

17. The Travel Ban, Quarantine and Prosecution Notice, and other executive orders issued by the Governor, do not provide any right or opportunity for the individual Kentuckian to be heard if the individual is ordered to be quarantined, or detained, or otherwise punished for violating the Travel Ban.  These executive orders do not provide the individual Kentuckian with a right to be heard by a fair and independent tribunal if the citizen is ordered to be quarantined, or detained, or otherwise punished for violating the orders.  The executive orders provide no right to appeal a quarantine, detention, or punishment.

18. The executive orders do not provide Kentuckians with the right to present evidence, the right to know the evidence opposing them, the right to cross-examine, the opportunity for counsel, or the right to have a record.

19. During the COVID-19 outbreak, Governor Beshear and Mr. Friedlander have actively enforced the Governor's executive orders, including ordering sheriff's deputies to forcibly quarantine at least one Kentuckian who attempted to travel.

20. Upon information and belief, multiple Kentuckians in Louisville have been ordered to wear ankle monitors to ensure their government-imposed quarantine, even though they have not tested positive for COVID-19.

21. On the same day that the Governor instituted the Travel Ban, he also created the "COVID-19 Reporting Hotline" and requested that Kentuckians call it "for complaints about non-compliance with coronavirus mandates."

22. In the last three days, I went to a gas station and convenience store to see if they were open and whether the occupants were practicing appropriate social distancing. I observed that people were able to pay cash to the clerk where they were closer than six feet from each other. I also observed that more than 10 people could congregate at the store, and that people could buy non-essential goods such as lottery tickets.

Pursuant to 28 U.S.C. §1746, I declare under penalties of perjury under the laws of the United States of America that the foregoing Declaration is true and correct to the best of my knowledge and belief and that such facts are made based on my personal knowledge.

Executed on _____4/16/2020_____.  _____ *[signature: TJRoberts]*

Theodore Joseph Roberts