**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

*Electronically filed*

| | |
|---|---|
| THEODORE JOSEPH ROBERTS, *et al.*, <br><br>　　Plaintiffs <br><br> v. <br><br> ROBERT NEACE, in his official capacity as the Boone County Attorney, *et al.*, <br><br>　　Defendants | Judge William O. Bertelsman <br> Civil Action No. 2:20-cv-0054 |

---

### *AMICUS CURIAE* BRIEF OF
### THE COMMONWEALTH OF KENTUCKY IN SUPPORT OF
### PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

---

The Commonwealth of Kentucky submits the following *amicus curiae* brief in support of the Plaintiffs' motion to enjoin further enforcement of Governor Beshear's unconstitutional prohibition on religious services.[1]

On March 19, Governor Beshear banned Kentuckians from participating in all faith-based gatherings of any kind. Six days later, he ordered the closure of any business or organization that he does not consider "life-sustaining"—a vaguely defined term that includes newspapers, law firms, liquor stores, and hardware stores, but not churches, synagogues, or mosques. These restrictions apply no matter how

---

[1]  The Plaintiffs also challenge the constitutionality of Governor Beshear's executive order banning out-of-state travel. This *amicus curiae* brief addresses only the ban on religious services.

large the gathering might be, no matter where the people might get together, and regardless of whether they practice safe social-distancing and good hygiene.

This is unconstitutional. But it does not have to be this way.

The freedom to practice one's faith is a defining feature of American liberty. "Since the founding of this nation, religious groups have been able to 'sit in safety under [their] own vine and figtree, [with] none to make [them] afraid.'" *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 376 (6th Cir. 2018) (Thapar, J., dissenting) (quoting Letter from George Washington to Hebrew Congregation in Newport, R.I. (Aug. 18, 1790)). This is the promise of America. It is one of the Nation's "most audacious guarantees." *On Fire Christian Ctr., Inc. v. Fischer*, Civ. A. No. 3:20-cv-264, 2020 WL 1820249, at *3 (W.D. Ky. Apr. 11, 2020). But in the wake of Governor Beshear shutting the doors of houses of worship across Kentucky, it is a guarantee on shaky ground. This Court should grant the Plaintiffs' motion for a preliminary injunction.

## ARGUMENT

### I. Governor Beshear's executive orders target religious activity for disfavored treatment.

This case is primarily about two executive orders that Governor Beshear issued in response to the current Covid-19 pandemic. Together, these two orders amount to an outright ban on traditional, in-person religious services of any kind.

The first order, issued on March 19, prohibits "[a]ll mass gatherings." [DN 6-4 at 1]. Unlike other states adopting similar measures, "mass gathering" is not defined. Rather, Governor Beshear vaguely describes the scope of his order as "includ[ing] any

2

event or convening that brings together groups of individuals, including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities." [*Id*.]. The broad sweep of this prohibition is undeniable: It applies to gatherings of any number of people. It applies to gatherings in confined spaces as well as the outdoors. It applies to gatherings in which people remain 6 feet apart, and it applies to gatherings in which people drive up and never leave their cars.[2] This order is written as broadly as possible, and it leaves no doubt that *all* "faith-based" gatherings are illegal.

That's not to say, however, that the order is without exception. It in fact contains two. First, the order states that "a mass gathering does not include normal operations at airports, bus and train stations, medical facilities, libraries, shopping malls and centers, or other spaces where persons may be in transit." [*Id*.]. Second, the order provides that a mass gathering "does not include typical office environments, factories, or retail or grocery stores *where large numbers of people are present*, but maintain appropriate social distancing." [*Id*. (emphasis added)]. Religious activities are not included in either exemption.

Six days after prohibiting the vaguely-defined-but-broadly-applicable "mass gatherings," Governor Beshear issued an executive order closing all organizations that are not "life-sustaining." [Exec. Order 2020-257, DN 6-7 at 2]. "Life-sustaining" is defined in the order as any organization "that allow[s] Kentuckians to remain

---

[2] The Attorney General has explained as much in another *amicus curiae* brief. *See* Brief of Attorney General Daniel Cameron in *On Fire Christian Ctr., Inc. v. Fischer*, Civ. A. No. 3:20-cv-264 (W.D. Ky.), Doc. 29.

Healthy at Home." [*Id*. at 2]. It includes approximately 19 different categories of businesses and organizations. [*Id*. at 2–5]. Religious organizations are not among them.

What does Governor Beshear consider life-sustaining? "Media," is one example, which he defines as, "Newspapers, television, radio, and other media services." [*Id*. at 3]. Also included on the list are law firms, accounting services, real estate companies, liquor stores, and hardware stores. [*Id*. at 2, 4].

The lone reference to religious organizations in the March 25 order allows for religious charities to continue operating to the extent that they "provid[e] food, shelter, and social services, and other necessities of life for economically disadvantaged or special populations, individuals who need assistance as a result of this emergency, and people with disabilities." [*Id*. at 3]. So while the order does not permit religious organizations to provide *religious services* to their parishioners and members, it does allow them to provide the kinds of services that the Governor has pre-approved.

Together, the March 19 and March 25 orders impose a sweeping prohibition against religious activity throughout every corner of the Commonwealth. Even though these orders broadly permit individuals to crowd into hardware stores and law offices, or newsrooms, liquor stores, and grocery stores, they do not permit people to attend religious services at a church, mosque, synagogue, or other house of worship, even if they follow social-distancing guidelines. This is, without question, an unconstitutional targeting of religious activity. *See Ward v. Polite*, 667 F.3d 727, 738–

4

39 (6th Cir. 2012) ("What poses a problem is not the adoption of an anti-discrimination policy; it is the implementation of the policy, permitting secular exemptions but not religious ones and failing to apply the policy in an even-handed, much less a faith-neutral, manner to Ward.").

Governor Beshear defends his orders on the grounds that they are neutral toward religion and generally applicable because they "do[] not exempt secular mass gatherings." [DN 24 at 24]. That is, with respect, not accurate. As explained above, the mass-gathering ban permits gatherings in airports, grocery stores, office spaces, and other places "where large numbers of people are present." [DN 6-4 at 1]. These are all secular exemptions.

Only wordplay allows one to reach a different conclusion. Governor Beshear argues that the exemptions to the March 19 order are not exemptions at all. Rather, they are only "examples of what a 'mass gathering' is and what it is not." [DN 24 at 24]. But semantics like this cannot save his order—particularly not when courts must "meticulously" scrutinize state action that burdens religious freedom to determine whether it is neutral and generally applicable. *See Church of the Lukumi Bablu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). Whether Governor Beshear calls them exemptions or not, the reality is that there are entire categories of secular gatherings "where large numbers of people are present" that he has not banned.

This is justified, according to the Governor, because his mass-gathering ban prohibits activity based on the *purpose* of an event, not whether large numbers of people have actually gathered. [DN 24 at 24 ("[T]he distinction is that it closes any

5

event the *purpose* of which is to congregate person-to-person for an extended period to engage in a particular activity.")].[3] Yet even that is not true, either, as it overlooks a significant secular carve-out in the March 19 order. The order permits people to continue their daily routine in "typical office environments." For most offices, employees show up together for the *purpose* of working together for a common employer for an extended period of time. And employees work together in the same space for longer periods of time and with much more frequency than a typical religious service. Or said another way, people do not typically show up to new offices every day to work independently from strangers. So even the Governor's own explanation of what a "mass gathering" is does not align with what the March 19 order actually says.

"If the law appears to be neutral and generally applicable on its face, but in practice is riddled with exemptions . . . the law satisfies the First Amendment only if it advances interests of the highest order and is narrowly tailored in pursuit of those interests." *Ward*, 667 F.3d at 738 (cleaned up). Even orders that appear facially neutral are not treated as such when they are filled with exemptions for secular activities. Governor Beshear's orders single out faith-based activities for prohibition, while simultaneously allowing similarly risky secular activities to continue. This is

---

[3]   Here (and elsewhere) the Governor describes the mass-gathering ban as only applying to "person-to-person" gatherings. Yet the March 19 order contains no such limitation. *See* Brief of Attorney General Daniel Cameron in *On Fire Christian Ctr., Inc. v. Fischer*, Civ. A. No. 3:20-cv-264 (W.D. Ky.), Doc. 29.

quintessential discrimination against religion requiring the state to meet the high burden of strict scrutiny.

Just as troubling is Governor Beshear's refusal to define religious activity as "life-sustaining" for those Kentuckians with sincerely held beliefs about communal worship. Not every state has taken Governor Beshear's discriminatory path. Ohio, a state that has also implemented aggressive social-distancing protocols and shelter-in-place orders, recognized the danger in categorizing some activities as essential but excluding religion from that list:[4]

*Figure 1: Ohio's March 22 order defining essential businesses*

> d. **Organizations that provide charitable and social services.** Businesses and religious and secular nonprofit organizations, including food banks, when providing food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals, individuals who need assistance as a result of this emergency, and people with disabilities;
>
> e. **Religious entities.** Religious facilities, entities and groups and religious gatherings, including weddings and funerals.
>
> f. **Media.** Newspapers, television, radio, and other media services;
>
> g. **First amendment protected speech.**
>
> h. **Gas stations and businesses needed for transportation.** Gas stations and auto supply, auto-repair, farm equipment, construction equipment, boat repair, and related facilities and bicycle shops and related facilities;

Governor Beshear issued a similar order three days later, when he set out the 19 different categories of "life-sustaining" businesses that can remain open. While much

---

[4] Ohio's March 22 shelter-in-place order is available at https://coronavirus.ohio.gov/static/DirectorsOrderStayAtHome.pdf (last visited Apr. 28, 2020). Ohio has since revised its initial order, but it has retained the exemption for religious entities. *See* Ohio April 2, 2020 Order, available at https://coronavirus.ohio.gov/static/publicorders/Directors-Stay-At-Home-Order-Amended-04-02-20.pdf (last visited Apr. 28, 2020).

of the wording is the same as Ohio's order, Governor Beshear excluded religious organizations from the list of permissible activity:

*Figure 2: Kentucky's March 25 order defining "life-sustaining" businesses*

> d. **Organizations that provide charitable and social services.** Businesses and religious and secular nonprofit organizations, including food banks, when providing food, shelter, and social services, and other necessities of life for economically disadvantaged or special populations, individuals who need assistance as a result of this emergency, and people with disabilities. These organizations have a special responsibility to implement social distancing to the fullest extent possible, and to take all necessary actions to stop the spread of disease, including by stopping in-person retail operations.
>
> e. **Media**. Newspapers, television, radio, and other media services.
>
> f. **Gas stations and businesses needed for transportation**. Gas stations and auto-supply, auto-repair, farm equipment, construction equipment, boat repair, and related facilities; bicycle repair shops and related facilities; and motorcycle repair shops.

The exclusion of religious organizations from the list of "life-sustaining" activities is no small matter. Unlike our neighbors in Ohio, Governor Beshear has publicly declared that attending worship service is not life-sustaining, while allowing liquor stores and retailers to continue operating. It is mind-boggling discrimination. Or as a Kentucky district court noted in a similar case, "if beer is 'essential,' so is Easter." *On Fire Christian Ctr.*, 2020 WL 1820249, at *7.[5] The fact that Governor

---

[5] Nor does it lessen the discriminatory sting that Governor Beshear has recommended Kentuckians attend virtual services as an alternative, as he argues. [*See* DN 24 at 25]. With respect, the point of the First Amendment is that Governor Beshear does not get to decide whether a virtual gathering is sufficient for every person of every faith. On this issue, Governor Beshear has gone remarkably far in dictating how Kentuckians should exercise their religion. At his Good Friday daily press conference, the Governor chastised people about what a true "test of faith" is. He proclaimed: "It is not a test of faith in whether you're going to an in-person service, it's a test of faith that you're willing to sacrifice to protect your fellow man, your fellow woman, your fellow Kentuckian, and your fellow American." April 10, 2020 Press Conference at 34:48, available at https://www.youtube.com/watch?v=G_JL0P_mgKk (last visited Apr. 28, 2020). Yet the First Amendment exists precisely to protect the

Beshear has identified 19 categories of activities that are, in his judgment, more essential than in-person church services is proof positive of impermissible targeting of religious exercise. The First Amendment forbids Governor Beshear from deeming communal religious exercise as non-essential.

The thrust of the March 19 and March 25 orders are clear: Despite the First Amendment and Kentucky's own uniquely strong protections for religious liberty, Governor Beshear has failed to adopt neutral or generally applicable laws to address the current crisis, instead choosing to target religious organizations for disfavored treatment. It is, "'beyond all reason,' unconstitutional." *On Fire Christian Ctr.*, 2020 WL 1820249, at *2 (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905)).

## II. The ban on religious worship is not narrowly tailored.

The black letter law governing Free Exercise claims is straightforward. The First Amendment prohibits the government from burdening one's "free exercise" of religion. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). And Kentucky's present constitution does the same. *See* Ky. Const. §§ 1, 5; *Gingerich v. Commonwealth*, 382 S.W.3d 835, 839 (Ky. 2012). In practice, that means the government cannot implement laws "targeting religious beliefs as such." *Lukumi*, 508 U.S. at 533. But it also means that "[o]fficial action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *Id.* at 534. Public officials, in other words, cannot target religion through selective enforcement of otherwise neutral laws. *See id.* at 543. Rather, laws

---

beliefs of those who disagree. It ensures that people don't have to worship in the way that Governor Beshear orders.

must be neutral and generally applicable in both text and reality to survive constitutional scrutiny. *See Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877–78 (1990). And "[a] law that targets religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases." *Lukumi*, 508 U.S. at 546. This is not one of those cases.

No one doubts that the government has a compelling interest in preventing the spread of Covid-19 during the current pandemic. But so far, Governor Beshear has offered no explanation as to why it is necessary to prohibit religious activities that pose exactly the same risk as similar, non-religious activities. In fact, in his brief opposing the Plaintiffs' request for a preliminary injunction, Governor Beshear does not even *attempt* to defend his orders on the grounds that they are narrowly tailored.[6] Instead, he offers only the cursory defense that his orders satisfy rational-basis review. That is not the standard, and these orders cannot survive strict scrutiny.

---

[6] This is troubling. Though the Plaintiffs do not raise a claim under the Kentucky Religious Freedom Restoration Act, it nevertheless remains the law of the Commonwealth. Under KRFRA, "[g]overnment shall not substantially burden a person's freedom of religion." Ky. Rev. Stat. 446.350. "Burden" is defined to include "indirect burdens such as withholding benefits, *assessing penalties*, or an exclusion from programs or *access to facilities*." *Id.* (emphases added). There is no question that the Governor's orders burden "access" to the facilities of houses of worship across Kentucky—the Governor has, after all, ordered that no one attend services at their houses of worship. The question, then, is whether the Governor is likely to prove "by clear and convincing evidence that [he] has a compelling governmental interest in infringing the specific act or refusal to act and has used the least restrictive means to further that interest." *Id.* So even if the orders do not target religion, under Kentucky law the Governor must still show that his actions are the least-restrictive means of furthering the state's interest.

Governor Beshear's defense of his orders is their undoing. As explained above, he says that the ban on mass gatherings intentionally draws a distinction based the "*purpose*" of the activity. [DN 24 at 24]. While that description is dubious, it highlights exactly how this order fails the narrow-tailoring test. Put simply, the coronavirus does not care about the "purpose" for which people get together. Or as Governor Beshear's Commissioner of the Department for Public Health, Dr. Steven J. Stack, put it, "Diseases like COVID-19 do not discriminate." [DN 24-1, ¶ 39]. They spread through close contact, making people just as contagious when standing in line at a liquor mart or hardware store as they are when standing in line to take communion. So the obvious, least-restrictive means of preventing the spread of Covid-19 is not to target the *purpose* for which people come into close contact, as Governor Beshear's March 19 order attempts to do, but to target the close contact itself. By simply implementing the same social-distancing measures for religious gatherings as for liquor stores, retail chains, and offices, the Governor could achieve the same state interest in a less-restrictive manner.

Consider, for example, the carve-out for trains, buses, and airplanes in the March 19 order. Governor Beshear defends this exemption on the grounds that these experiences are "a single and transitory experience," whereas church services are "by design a communal experience, one for which a large group of individuals come together at the same time in the same place for the same purpose." [DN 24 at 24–25]. But is the coronavirus less likely to spread because the passengers on a plane are strangers? By the Governor's own telling, the only difference between these two

11

activities is the reason the individuals get together. Yet surely a trip on a train, bus, or airplane might last longer than an ordinary worship service, and it might require individuals to sit even closer together than when in a large auditorium. Similarly, a "transitory" shopping experience at a big-box retailer creates the risk that one might run into any number of strangers at the corner of every aisle. The risk does not exist because the individuals *intend* to be together; it exists because they *are* together. So a narrowly tailored order would prohibit the contact itself, not the purpose of the gathering.

Moreover, there is ample evidence to suggest that broadly banning church services is not the least restrictive way of preventing further danger from Covid-19. Tennessee, for example, has not closed its places of worship. Yet Kentucky's hospitalization rate for Covid-19 is more than twice that of Tennessee's, and Tennessee has had 40 percent fewer deaths per capita.[7] To this date, Governor Beshear has failed to offer any evidence that closing religious services is more effective than mandatory strict social distancing.

And on the point of geography, Governor Beshear's orders face other problems as well. Governor Beshear has insisted on maintaining a statewide lockdown that

---

[7] *See* Pegasus Institute, *Kentucky Coronavirus Hospitalizations per capita More than 2x Higher than Tennessee*, available at https://www.pegasuskentucky.org/single-post/2020/04/23/Kentucky-Coronavirus-Hospitalizations-per-capita-More-than-2x-Higher-than-Tennessee (last visited Apr. 28, 2020); Pegasus Institute, *Tennessee has Tested 3x as Many Residents as Kentucky and has 40% Fewer Deaths Per Capita*, available at https://www.pegasuskentucky.org/single-post/2020/04/22/Tennessee-has-Tested-3x-as-Many-Residents-as-Kentucky-and-has-40-Fewer-Deaths-Per-Capita (last visited Apr. 28, 2020).

does not take into account varying infection rates in different places. Currently, there are 8 counties in Kentucky that have *zero* reported cases and another 56 counties that have between one and ten.[8] While residents of Jefferson County are free to continue shopping at big box retailers and grocery stores, where they might run into countless strangers as they turn the corner of an aisle, residents in Harlan where there are *no reported cases* are forbidden from attending church on Sunday. It defies logic to label this as the least-restrictive means of stopping the spread of Covid-19.

Nor can Governor Beshear find support in *Jacobson v. Massachusetts*. Even under *Jacobson*, a law is invalid if "purporting to have been enacted to protect the public health, the public morals, or the public safety, [the law] has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." 197 U.S. at 31. That is precisely the problem with Governor Beshear's executive orders here. Singling out religious activity for disfavored treatment is the kind of "palpable invasion of rights" that even a pandemic cannot justify. *On Fire Christian Ctr.*, 2020 WL 1820249, at *8 n.73.

So what is it that permits Governor Beshear to treat religious services differently than professional offices, retail establishments, factories, libraries, or any number of other entities that remain open? The short answer is nothing.

## CONCLUSION

Governor Beshear, county judge/executives, and mayors have had to deal with extraordinary challenges over the past few weeks. Most Kentuckians have wanted to

---

[8] *See* Kentucky Department of Public Health, available at https://govstatus.egov.com/kycovid19 (last visited Apr. 28, 2020).

do their part to contain and defeat the invisible Covid-19 foe. But, with the passage of time, we are better positioned to focus on remedies that protect the public from the spread of the virus while still protecting the religious liberty that our citizens have been deprived of. The overbroad orders Governor Beshear issued closing houses of worship across the state are palpably unconstitutional, and for this reason, the Court should grant the Plaintiffs a preliminary injunction.

Respectfully submitted by,

/s/ Carmine G. Iaccarino
Daniel Cameron
*Attorney General*
Barry L. Dunn
*Deputy Attorney General*
Victor B. Maddox
*Assistant Deputy Attorney General*
Carmine G. Iaccarino
*Assistant Attorney General*
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Barry.Dunn@ky.gov
Victor.Maddox@ky.gov
Carmine.Iaccarino@ky.gov

**CERTIFICATE OF SERVICE**

I filed the above document on April 29, 2020 using the Court's CM/ECF system, which will electronically serve a copy to all counsel of record.

/s/ Carmine G. Iaccarino