**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**

| | | |
|---|---|---|
| THEODORE JOSEPH ROBERTS, et. al. | : | Case No. 2:20-CV-00054-WOB |
|    Plaintiffs | : | |
| v. | : | |
| ROBERT NEACE, et. al. | : | |
|    Defendants | : | |

## NOTICE OF APPEAL

Plaintiffs, by and through Counsel, give notice of appeal of the District Court's decision on the Preliminary Injunction and the Preliminary Injunction [RE#46; RE#47], entered this 5th day of May, 2020 (attached hereto), to the United States Court of Appeals for the Sixth Circuit.

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Thomas Bruns_____
Thomas Bruns (KBA 84985)
4750 Ashwood Drive, STE 200
Cincinnati, OH 45241
tbruns@bcvalaw.com
513-312-9890

/s/Robert A. Winter, Jr. _____
Robert A. Winter, Jr. (KBA #78230)
P.O. Box 175883
Fort Mitchell, KY 41017-5883
(859) 250-3337

1

robertawinterjr@gmail.co

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon Counsel for the Defendants, this 4th day of May, 2020.

/s/ Christopher Wiest\
Christopher Wiest (KBA 90725)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:20cv054 (WOB-CJS)

THEODORE JOSEPH ROBERTS,
ET AL.                                               PLAINTIFFS

VS.              MEMORANDUM OPINION AND ORDER

HON. ROBERT NEACE,
ET AL.                                               DEFENDANTS

Plaintiffs Theodore Joseph Roberts, Randall Daniel, and Sally Boyle bring this action challenging the constitutionality of certain measures instituted by the Commonwealth of Kentucky in response to the COVID-19 public health crisis.

Specifically, plaintiffs Daniel and Boyle allege that the ban on "mass gatherings" as applied to in-person church attendance violates their right to freedom of religion under the First Amendment. (Doc. 6, ¶¶ 56-66). Plaintiff Roberts alleges that restrictions on out-of-state travel violate his fundamental liberty interest and thus his right to substantive due process. (*Id.* ¶¶ 67-73). Plaintiffs further allege that the Travel Ban violates their right to procedural due process. (*Id.* ¶¶ 74-79).

This matter is before the Court on plaintiffs' emergency motion for temporary restraining order and motion for preliminary

injunction (Doc. 7). The Court previously heard oral argument on these motions and took the matter under submission. (Doc. 33).

By agreement of the parties, the Court now issues the following Memorandum Opinion and Order ruling on plaintiffs' motion for preliminary injunction.[1]

*Factual and Procedural Background*

A. **Challenged Restrictions**

On March 6, 2020, Kentucky Governor Andrew Beshear began issuing a series of Executive Orders placing restrictions on Kentucky citizens as part of an effort to slow the spread of the COVID-19 virus in the Commonwealth. (Am. Compl. ¶¶ 13-23).

As relevant here, on March 19, 2020, Governor Beshear issued an Executive Order prohibiting all "mass gatherings." (Am. Compl. Exh. D). The Order states: "Mass gatherings include any event or convening that brings together groups of individuals, including, but not limited to, community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities." The Order states that mass gatherings do not include "normal operations at

---

[1] The Court acknowledges that Governor Beshear has filed a notice stating that beginning on May 20, 2020, "faith-based organizations will be permitted to have in-person services at a reduced capacity, with social distancing, and cleaning and hygiene measures implemented and followed." (Doc. 40). Given that this date is nearly three weeks away, the Court concludes that an expeditious ruling herein is still warranted.

airports, bus and train stations, medical facilities, libraries, shopping malls and centers, or other spaces where persons may be in transit," as well as "typical office environments, factories, or retail or grocery stores where large numbers of people are present, but maintain appropriate social distancing." (*Id.*).

Subsequent Executive Orders closed non-life-sustaining retail businesses; banned most elective medical procedures; shut down additional businesses for in-person work; and placed further restrictions on retail establishments that were allowed to remain open. (Am. Compl. ¶¶ 18-23).

On March 30, 2020, the Governor issued an Executive Order banning Kentucky residents from travelling out of state, except when required for employment; to obtain groceries, medicine, or other necessary supplies; to seek or obtain care by a licensed healthcare provider; to provide care for dependents, the elderly, or other vulnerable person; or when required by court order. (Am. Compl. Exh. H). The Order also required any Kentuckian in another state for reasons other than those set forth in the exceptions to self-quarantine for fourteen days upon returning to Kentucky. (*Id.*).

Finally, on April 2, 2020, Governor Beshear issued an additional Executive Order expanding the travel ban to require residents of states other than Kentucky who travel into the

Commonwealth for reasons outside the above exceptions also to self-quarantine for fourteen days. (Am. Compl. Exh. I).

B. **Bases for Plaintiffs' Claims**

Notwithstanding the ban on mass gatherings, on Easter Sunday, April 12, 2020, plaintiffs attended in-person church services at Maryville Baptist Church in Hillview, Bullitt County, Kentucky. (Am. Compl. ¶ 27). Plaintiffs allege that they did so in accord with their sincerely held religious beliefs that in-person church attendance was required, and that they observed appropriate social distancing and safety measures during the service. (*Id.* ¶¶ 28-29).

Upon exiting the church, plaintiffs found on their vehicle windshields a Notice informing them that their presence at that location was in violation of the "mass gathering" ban. (Am. Compl. ¶ 32). Plaintiffs allege that the notices were placed there by the Kentucky State Police at the behest of Governor Beshear, who had stated that he was going to target religious services for such notices. (*Id.* ¶ 33-34).

The Notice states that the recipient is required to self-quarantine for fourteen days and that the local health department will send them a self-quarantine agreement. In bold, the notice continues: "Failure to sign or comply with the agreement may result in further enforcement measures," and "Please be advised that KRS 39A.990 makes it a Class A misdemeanor to violate an emergency

order." (*Id.* ¶ 32). Plaintiffs subsequently received such documentation from the Kentucky Cabinet for Health and Family Services, Department for Public Health. (Doc. 37 at 5-6).

With regard to the Travel Ban, plaintiff Roberts alleges that the ban prevents him from travelling to Ohio and Indiana for a variety of personal reasons that do not fall within the exceptions found in Governor Beshear's orders. (Am. Compl. ¶ 40).

### *Analysis*

"A preliminary injunction is an 'extraordinary remedy never awarded as of right.'" *Adams & Boyle, P.C. v. Slatery*, - F.3d -, No. 20-5408, 2020 WL 1982210, at *7 (6th Cir. April 24, 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, (2008)). "Rather, the party seeking the injunction must prove: (1) that they are likely to succeed on the merits of their claim, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest." *Id.* A court considering whether to grant a preliminary injunction must therefore "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (citation omitted).

**A. Mass Gathering Ban**

The Court first considers plaintiffs' claim that Kentucky's ban on mass gatherings impermissibly infringes their First Amendment right to the free exercise of religion.

The Free Exercise Clause of the First Amendment, which has been applied to the States through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

"A law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.*  A law is not neutral if it "discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons."  *Id.* at 533. Stated differently, neutrality is lacking where "the object of a law is to infringe upon or restrict practices because of their religious motivation."  *Id.*

Further, as to general applicability, the Supreme Court noted in *Lukumi* that "all laws are selective to some extent," and that reality does not render a law constitutionally suspect.  *Id.* at 542.  Rather, the First Amendment inquiry, again, focuses on

whether the government is selectively imposing "burdens only on conduct motivated by religious belief." *Id.* at 543.

A law that fails to satisfy the neutrality and general applicability requirements "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.* 531-32.

With these principles in mind, it is abundantly clear that the "object or purpose of" Kentucky's mass gathering ban is not "the suppression of religion or religious conduct." *Lukumi*, 508 U.S. at 533. To the contrary, the plain text of the challenged order categorically bans all "mass gatherings" as a means of preventing the spread of a life-threatening virus. The illustrative examples set forth are sweeping: "community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities." (Doc. 6-4 at 1).

Plaintiffs do not argue that the State has permitted any other of the cited examples of mass gatherings to take place; rather, plaintiffs argue that certain businesses that the government has allowed to remain open present similar health risks. That, of course, is a judgment call, but what is missing is any evidence that Kentucky has conducted the essential/non-essential analysis with religion in mind. *Lukumi*, 508 U.S. at 543.

Moreover, there is an undeniable difference between certain activities that are, literally, *life* sustaining and other that are not. Food, medical care and supplies, certain travel necessary to maintain one's employment and thus income, are, in that sense, essential. Concerts, sports events, and parades clearly are not. And while plaintiffs argue that faith-based gatherings are as important as physical sustenance, as a literal matter, they are not *life*-sustaining in the physical sense.

As the Sixth Circuit observed just recently in the context of this pandemic, it "is imperative in such circumstances that judges give legislatures and executives—the more responsive branches of government—the flexibility they need to respond quickly and forthrightly to threats to the general welfare, even if that flexibility sometimes comes at the cost of individual liberties." *Adams & Boyle, P.C. v. Slatery*, — F.3d —, No. 20-5408, 2020 WL 1982210, at *1 (6th Cir. April 24, 2020).

Does the mass gathering ban have the effect of preventing plaintiffs who comply with it from attending in-person church services? Yes. Does the ban do so because the gatherings are faith-based? No.

For this reason, another Kentucky federal court hearing a case brought by the church attended by plaintiffs recently denied the church's motion for a temporary restraining order, finding that the church had not demonstrated a likelihood of success on

the merits of its First Amendment claim. *See Maryville Baptist Church, Inc. v. Beshear*, — F. Supp.3d -, No. 3:20cv278, 2020 WL 1909616 (W.D. Ky. April 18, 2020). The relief sought by the church was the same: in-person services with no state-imposed restrictions.[2]

The Court notes that just two days ago the Court of Appeals for the Sixth Circuit overruled, in part, Judge Hale's denial of the temporary restraining order. (Doc. 41-1). However, the Sixth Circuit expressly limited its holding to drive-in church services:

> The Governor and all other Commonwealth officials are hereby enjoined, during the pendency of this appeal, from enforcing orders **prohibiting drive-in services** at the Maryville Baptist Church if the Church, its ministers, and its congregants adhere to the public health requirements mandated for "life-sustaining" entities.

*Id.* at 10 (emphasis added). And the Court stated: "[W]e are inclined not to extend the injunction to in-person services at this point." *Id.* Had the Court felt that such a broader injunction

---

[2] Another court granted plaintiffs a temporary restraining order where the City of Louisville had banned **drive-in** church services, which the plaintiffs wished to attend on Easter. *See On Fire Christian Center, Inc. v. Fischer*, — F. Supp. 3d —, No. 3:20cv264, 2020 WL 1820249, at *8 (W.D. Ky. April 11, 2020). Although plaintiffs here make a passing reference in their Complaint to drive-in services, that is not the relief they seek, nor have they suggested it as a compromise. The Court also notes that Governor Beshear, at the Court's invitation, filed an *amicus curiae* brief in that case stating his position that his "mass gathering" ban does not prohibit drive-in religious services where proper safety protocol are observed. *See* Case No. 3:20cv264, Doc. 27. The issue in *On-Fire* was thus different than the one before this Court.

was warranted, it was within its power to so order. This Court thus does not find that opinion to control the outcome here.

In his opinion, Judge Hale also considered the church's claim under the Kentucky Religious Freedom Restoration Act, which invokes the more demanding "compelling interest" test. Judge Hale concluded that, even under that standard, the church did not demonstrate a likelihood of success. *Id.* at *3.

This Court agrees. The current public health crisis presents life-or-death dangers. Plaintiffs are not alone in having their lives and activities disrupted by it and the measures that our federal and state governments have taken to address it. Indeed, it is hard to imagine that there is any American that has not been impacted. But unless a law can be shown to have religion within its cross-hairs, either facially or in application, the fact that religious practices are impinged by it does not contravene the First Amendment.

For these reasons, the Court concludes that plaintiffs have not shown a likelihood of success on their merits of their First Amendment claim, and their motion for preliminary injunction on that basis will be denied.[3]

---

[3] For the same reasons, the Court also concludes that plaintiffs have failed to satisfy the remaining preliminary injunction factors.

B. **Travel Ban**[4]

After careful review, the Court concludes that the Travel Ban does not pass constitutional muster. The restrictions infringe on the basic right of citizens to engage in interstate travel, and they carry with them criminal penalties.

The "'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence." *Saenz v. Rose*, 526 U.S. 489, 498 (1999) (quoting *United States v. Guest,* 383 U.S. 745, 757 (1966)). Indeed, the right is "virtually unconditional." *Id.* (quoting *Shapiro v. Thompson*, 394 U.S. 618, 643 (1969)). *See also United States v. Guest,* 383 U.S. 745, 757 (1966) ("The constitutional right to travel from one State to another ... occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized.").

To be valid, such orders must meet basic Constitutional requirements. As the Supreme Court has stated:

> (E)ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose.

---

[4] Prospective injunctive relief against State defendants is proper under the doctrine of *Ex Parte v. Young*, 209 U.S. 123 (1908).

*Aptheker v. Sec. of State*, 378 U.S. 500, 508 (1964) (quoting *NAACP v. Alabama*, 377 U.S. 288, 307-08 (1964)).

"Ordinarily, where a fundamental liberty interest protected by the substantive due process component of the Fourteenth Amendment is involved, the government cannot infringe on that right 'unless the infringement is narrowly tailored to serve a compelling state interest.'" *Johnson v. City of Cincinnati*, 310 F.3d 484, 502 (6th Cir. 2002) (quoting *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997)). *See also Adreano v. City of Westlake,* 136 F. Appx. 865, 870-71 (6th Cir. 2005) (discussing arbitrary and capricious aspect of substantive due process claim); *Pearson v. City of Grand Blanc,* 961 F2d 1211, 1217 (6th Cir. 1992) (similar).

The travel restrictions now before the Court violate these principles. They have the following effects, among others:

> 1. A person who lives or works in Covington would violate the order by taking a walk on the Suspension Bridge to the Ohio side and turning around and walking back, since the state border is several yards from the Ohio riverbank.
>
> 2. A person who lives in Covington could visit a friend in Florence, Kentucky (roughly eight miles away) without violating the executive orders. But if she visited another friend in Milford, Ohio, about the same distance from Covington, she would violate the Executive Orders and have to be quarantined on return to Kentucky. Both these trips could

be on an expressway and would involve the same negligible risk of contracting the virus.

3. Family members, some of whom live in Northern Kentucky and some in Cincinnati less than a mile away, would be prohibited from visiting each other, even if social distancing and other regulations were observed.

4. Check points would have to be set up at the entrances to the many bridges connecting Kentucky to other states. The I-75 bridge connecting Kentucky to Ohio is one of the busiest bridges in the nation. Massive traffic jams would result. Quarantine facilities would have to be set up by the State to accommodate the hundreds, if not thousands, of people who would have to be quarantined.

5. People from states north of Kentucky would have to be quarantined if they stopped when passing through Kentucky on the way to Florida or other southern destinations.

6. Who is going to provide the facilities to do all the quarantining?

The Court questioned counsel for defendants Beshear and Friedlander during oral argument about some of these potential applications of the Travel Ban, and counsel indeed confirmed that the Court's interpretations were correct. (Doc. 38 at 9-13).

The Court is aware that the pandemic now pervading the nation must be dealt with, but without violating the public's constitutional rights. Not only is there a lack of procedural due process with respect to the Travel Ban, but the above examples show that these travel regulations are not narrowly tailored to achieve the government's purpose. *See Johnson v. City of Cincinnati*, 310 F.3d 484, 503 (6th Cir. 2002) ("[I]f there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose 'less drastic means.'") (quoting *Dunn v. Blumstein*, 405 U.S. 330, 343 (1972)).[5]

---

[5] Minor amendments to the regulations might alleviate the problems. For example, the Ohio travel regulations only restrict travel into that state by a person who intends to "stay" in the state. While the word "stay" is perhaps vague, it certainly implies an intent to remain in the state at least 24 hours, so that persons stopping while driving through the state or changing planes at the airport would not face the risk of being unnecessarily quarantined for 14 days.

Further, the Ohio provisions are *requests* for the most part and recite that they have been issued for the "guidance" of the public. Nor do they apply "to persons who as part of their normal life live in one state and work or gain essential services in another state."

Ohio's rules, therefore, do not appear overbroad and have a rational basis for combating the coronavirus, while still preserving the population's constitutional rights.

Therefore, a preliminary injunction will enter declaring the Travel Ban orders invalid and prohibiting their enforcement.

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that:

(1) Plaintiffs' motion for a preliminary injunction (Doc. 7) be, and is hereby, **GRANTED IN PART AND DENIED IN PART**;

(2) Plaintiffs shall post a bond in the amount of $1000.00. *See* Fed. R. 65 (c); and

(3) A preliminary injunction consistent with this Memorandum Opinion and Order shall enter concurrently herewith.

This 4th day of May 2020.



Signed By:
**William O. Bertelsman** WOB
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:20cv054 (WOB-CJS)

THEODORE JOSEPH ROBERTS,
ET AL.                                                    PLAINTIFFS

VS.                     **PRELIMINARY INJUNCTION**

HON. ROBERT NEACE,
ET AL.                                                    DEFENDANTS

Pursuant to the Memorandum Opinion and Order entered concurrently herewith, which declares unconstitutional the Travel Ban promulgated by The Honorable Andrew Beshear, Governor of the Commonwealth of Kentucky, in conjunction with the COVID-19 emergency,

The Court hereby **PRELIMINARILY RESTRAINS AND ENJOINS** The Honorable Andrew Beshear, Governor of the Commonwealth of Kentucky and all other persons in active concert or participation with him, from enforcing Executive Order 2020-258 and Executive Order 2020-266, paragraphs 8-9, pending further Order of the Court.

This 4th day of May 2020.



Signed By:
*William O. Bertelsman* WOB
United States District Judge