RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0069p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

THEODORE JOSEPH ROBERTS, RANDALL DANIEL, and SALLY O'BOYLE, on behalf of themselves and all others similarly situated,

    *Plaintiffs-Appellees*,

  *v.*

ROBERT D. NEACE,

    *Defendant*,

ANDREW G. BESHEAR, in his official capacity as the Governor of the Commonwealth of Kentucky, and ERIC FRIEDLANDER, Secretary, Kentucky Cabinet for Health and Family Services,

    *Defendants-Appellants*.

> No. 22-5985

Appeal from the United States District Court for the Eastern District of Kentucky at Covington.
No. 2:20-cv-00054—William O. Bertelsman, District Judge.

Decided and Filed: April 10, 2023

Before: SUTTON, Chief Judge; McKEAGUE and NALBANDIAN, Circuit Judges.

---

### COUNSEL

**ON BRIEF:** S. Travis Mayo, Taylor Payne, Laura Tipton, OFFICE OF THE GOVERNOR, Frankfort, Kentucky, Wesley W. Duke, David T. Lovely, OFFICE OF LEGAL SERVICES, CABINET FOR HEALTH AND FAMILY SERVICES, Frankfort, Kentucky, for Appellants. Christopher Wiest, CHRIS WIEST, ATTORNEY AT LAW, PLLC, Crestview Hills, Kentucky, Thomas B. Bruns, BRUNS, CONNELL, VOLLMAR & ARMSTRONG, LLC, Cincinnati, Ohio, for Appellees.

Case: 2:20-cv-00054-WOB-CJS   Doc #: 129   Filed: 04/10/23   Page: 2 of 7 - Page ID#: 1885

No. 22-5985                    Roberts, et al.  v. Neace, et al.                    Page 2

## OPINION

SUTTON, Chief Judge.  In 2020, three individuals opposed the Kentucky Governor's COVID-19 restrictions on religious gatherings.  They received preliminary injunctions against the orders, and the district court awarded them attorney's fees as prevailing parties.  *See* 42 U.S.C. § 1988(b).  We affirm the fees award.

I.

In April 2020, Theodore Roberts, Sally O'Boyle, and Randall Daniel celebrated Easter at Maryville Baptist Church in Kentucky.  That act placed them at odds with orders issued by Governor Andy Beshear and designed to limit COVID-19 transmission.  One order prohibited most mass gatherings, including religious services.  Another order prohibited travel in or out of Kentucky absent certain exceptions.  Violating either order amounted to a criminal misdemeanor. Ky. Rev. Stat. Ann. § 39A.990 (2020).

After the Easter service, Kentucky officials sent Roberts, O'Boyle, and Daniel a notice that logged their presence at a prohibited gathering and warned them of future "enforcement measures," including misdemeanor charges.  R.6 ¶ 32.  In response, the three congregants sued Governor Beshear, Boone County Attorney Robert Neace, and Kentucky's acting Health Secretary Eric Friedlander.  They claimed that the Governor's restrictions on religious gatherings and interstate travel violated the U.S. Constitution.  They sought general declaratory and injunctive relief and moved to enjoin any prosecution stemming from their attendance at the Easter service.

The congregants received preliminary injunctions against both orders.  Concluding that the order blocking travel to and from Kentucky likely violated the right to interstate travel, the district court preliminarily enjoined its enforcement.  While the district court refused to halt enforcement of the restrictions on religious gatherings, this court disagreed.  It enjoined the Governor and the other defendants from prohibiting services at Maryville Baptist Church. *Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020) (per curiam).  It reasoned that the order

likely violated the Free Exercise Clause because it treated religious gatherings less favorably than comparable secular gatherings. *Id.* at 413–14.

Before long, with the preliminary injunction in place, possibilities of mootness arose. *Maryville Baptist Church, Inc. v. Beshear*, 977 F.3d 561, 566 (6th Cir. 2020) (per curiam). Pointing that way, Governor Beshear issued new orders that allowed interstate travel and faith-based gatherings, and a district court in a related case enjoined the Governor from halting services at Maryville Baptist. *Maryville Baptist Church, Inc. v. Beshear*, No. 3:20-cv-278, 2020 WL 2393359, at *3 (W.D. Ky. May 8, 2020). The congregants eventually agreed to dismiss County Attorney Neace from the case. Shortly thereafter, the Kentucky legislature limited the Governor's authority to issue similar COVID-19 orders. *See Cameron v. Beshear*, 628 S.W.3d 61, 78 (Ky. 2021). The district court dismissed the congregants' case as moot.

The congregants sought attorney's fees. The district court awarded them $272,142.50.

II.

Governor Beshear challenges this fee award on two grounds. He argues that the congregants do not amount to prevailing parties and that the district court abused its discretion when it calculated the fee amount.

A.

*Prevailing party.* In the American legal system, winners and losers usually pay their own legal fees. *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001). An exception exists for civil rights cases and other actions that vindicate rights under federal law. In a § 1983 action, courts may grant "a reasonable attorney's fee" to "the prevailing party." 42 U.S.C. § 1988(b).

What happens when a claimant prevails in one sense (by receiving a preliminary injunction) but not in another sense (by failing to obtain a final judgment when the case becomes moot)? The question is a "thorny" one that requires a "contextual and case-specific" response. *McQueary v. Conway*, 614 F.3d 591, 596, 604 (6th Cir. 2010). Ordinarily, a preliminary injunction by itself does not suffice, especially when the relief is principally designed to preserve

the status quo relationship of the parties and has little to do with the merits. But a preliminary injunction may well suffice if it mainly turns on the likelihood-of-success inquiry and changes the parties' relationship in a material and enduring way. *See Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019); *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753 (6th Cir. 2002). One "touchstone" of this last inquiry is a "material alteration of the legal relationship of the parties." *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989).

Gauged by these principles, the congregants prevailed. The federal courts enjoined the limitations on religious gatherings and interstate travel. Both injunctions changed the legal relationship between the congregants and Governor Beshear because they stopped the Governor from enforcing his orders and allowed the congregants to act in ways that he had "previously resisted." *McQueary*, 614 F.3d at 600. That is "assuredly" a material, court-ordered change. *Id.*

The injunctions, though preliminary, also qualify as enduring. The nature of the injunctions, the longevity of the relief, and the irrevocability of the relief all point in the same direction.

Begin with the nature of the injunctions. An ill-considered, hastily entered, or tentative injunction points against enduring relief. *See Sole v. Wyner*, 551 U.S. 74, 83–85 (2007). So does an injunction that maintains the status quo without addressing the merits. *See Dubuc*, 312 F.3d at 753–54. The same holds true for an injunction that is later overturned, repudiated, or vacated. *Sole*, 551 U.S. at 84–85.

These preliminary injunctions measure up favorably. They were not "fleeting" or "hasty" opinions that merely preserved the status quo until time allowed for a closer look. *Id.* at 83–84. Instead, the injunctions, entered after briefing and argument, focused on the legal reality that the congregants would likely succeed on the merits. *See Planned Parenthood Sw. Ohio Region v. DeWine*, 931 F.3d 530, 539 (6th Cir. 2019). We have labeled similar preliminary injunctions as "final in all but name." *Tenn. State Conf. of NAACP v. Hargett*, 53 F.4th 406, 408 (6th Cir. 2022).

Time also looked favorably on the preliminary injunctions. No later decision reversed or vacated the injunctions. *See DeWine*, 931 F.3d at 539. Instead, the view expressed in the Sixth

Circuit injunction informed the analysis of other COVID-19 restrictions, both in this circuit and beyond.  *See, e.g.*, *Agudath Isr. of Am. v. Cuomo*, 983 F.3d 620, 634 (2d Cir. 2020); *Doster v. Kendall*, 54 F.4th 398, 428 (6th Cir. 2022); *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 346 (7th Cir. 2020); *Capitol Hill Baptist Church v. Bowser*, 496 F. Supp. 3d 284, 297 (D.D.C. 2020); *State v. Spell*, 339 So. 3d 1125, 1136–37 (La. 2022).  And it guided other cases addressing Governor Beshear's orders.  *See, e.g.*, *Commonwealth v. Beshear*, 981 F.3d 505, 509 (6th Cir. 2020); *Ramsek v. Beshear*, 468 F. Supp. 3d 904, 913–14 (E.D. Ky. 2020); *Danville Christian Acad., Inc. v. Beshear*, 503 F. Supp. 3d 516, 524 (E.D. Ky. 2020).  All told, at least seventy cases cite the Sixth Circuit's preliminary injunction.  The rationale in that case remains the law of the circuit, now indeed the law of the nation.  *Maryville*, 977 F.3d at 563; *see Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam); *see also Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 482 (6th Cir. 2020); *Ramsek v. Beshear*, 989 F.3d 494, 497 (6th Cir. 2021); *Vitolo v. Guzman*, 999 F.3d 353, 365 (6th Cir. 2021); *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022); *Commonwealth v. Biden*, 57 F.4th 545, 550 (6th Cir. 2023).

The statutory inquiry, we appreciate, refers to prevailing parties, not prevailing opinions.  But the continued invocation of this published opinion within and outside the circuit confirms that there is little prospect—none, really—that "the court would reverse course, and enter judgment in favor of the defendants."  *Hargett*, 53 F.4th at 411.

The longevity of the relief points the same way.  The Sixth Circuit's injunction held for six months, and the district court's injunction lasted for over a year.  During those periods, the congregants could attend faith-based gatherings and travel out of state, all without the threat of enforcement.  Those benefits qualify as enduring.  *See id.*; *cf. DeWine*, 931 F.3d at 541–42.

The relief endured in another tangible way.  The injunctions prevented Governor Beshear and other officials from prosecuting Roberts, Daniel, and O'Boyle for violating the mass-gatherings order when they attended church on April 12, 2020.  By precluding prosecution, the injunctions materially altered the congregants' relationship with Kentucky.  *See DeWine*, 931 F.3d at 539.  And that alteration endured because the statute of limitations expired while the injunctions tied Kentucky's hands.  Ky. Rev. Stat. Ann. § 500.050(2).  The congregants' freedom

from prosecution irrevocably changed their legal relationship with the Bluegrass State. *See Miller*, 936 F.3d at 449.

The Governor disagrees with much of this. He claims that the congregants did not prevail because Kentucky voluntarily changed the orders after the preliminary injunctions issued. Such voluntary changes by themselves, the Governor insists, foreclose prevailing party status because *Buckhannon* rejected a "catalyst" theory for awarding fees. 532 U.S. at 605. But *Buckhannon* holds that a plaintiff who receives no judicial relief cannot prevail simply because his adversary relents of his own accord. *Id.* Once a plaintiff earns "some relief," however, he steps outside *Buckhannon*'s domain. *Id.* at 603; *see Hargett*, 53 F.4th at 410–11; *Miller*, 936 F.3d at 449; *see also Amawi v. Paxton*, 48 F.4th 412, 417–18 (5th Cir. 2022). A defendant may not fairly claim that he voluntarily amended his behavior *after* a court enjoins his old ways. "An immediately enforceable preliminary injunction compelled [him] to." *McQueary*, 614 F.3d at 599.

The Governor objects that the preliminary injunctions did not give the congregants *all* they requested. To prevail, however, they need not win every issue, *Tex. State Tchrs. Ass'n*, 489 U.S. at 790–91, or receive all requested relief, *DeWine*, 931 F.3d at 541. They must simply "achieve[] some of the benefit [they] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The injunctions here certainly gave the congregants "some" of what they sought, including the removal of any threat of prosecution.

Pressing a similar point, Governor Beshear argues that the relief did not endure because both injunctions eventually ended. But enduring relief is not synonymous with permanent relief. Else, a preliminary injunction could never justify fees. True to our "contextual and case-specific inquiry," *McQueary*, 614 F.3d at 604, the lasting nature of relief remains a matter "of degree," *Hargett*, 53 F.4th at 410–11.

Governor Beshear responds that the relief was revocable because the preliminary injunctions left open the possibility that other restrictions on religious gatherings and interstate travel might be constitutional. But whatever room the Governor had to maneuver, he could not

No. 22-5985 *Roberts, et al.  v. Neace, et al.* Page 7

continue to do what he had done before or prosecute the congregants for what they had already done.  The preliminary injunctions limited him in ways that he could not ignore.

The Governor adds that relief from prosecution may not support a fee award because none of the remaining defendants prosecutes misdemeanors.  But problems with this argument abound.  One problem:  The Governor did not present it below.  Another:  He ignores evidence that he "actively enforced" the orders.  R.7-2 at 5.  Another:  He does not grapple with the possibility that he had some authority over prosecutions.  *See Ramsek*, 989 F.3d at 500 (finding it "not clear" whether the Governor controls prosecutions).  Still another:  The Governor cites nothing for the idea that a plaintiff may prevail against a rule's enforcer but not its promulgator.  That would be an odd line to draw, as we tend to make officials responsible for their own policies.  *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021).  In the last analysis, claims against an official in his official capacity amount to claims against the State, including fee awards under § 1988.  *See Hutto v. Finney*, 437 U.S. 678, 693–700 (1978).

B.

*Fee amount.*  In the alternative, Governor Beshear raises a bevy of reasons to reduce the fees that the district court awarded.  He claims that the congregants' attorneys billed excessive hours, used exorbitant rates, and should not have received fees for work they performed after the injunctions issued.  But these "essentially are factual matters" that implicate the district court's expertise, its ring-side seat in watching the case unfold, and its "superior understanding of the litigation."  *Hensley*, 461 U.S. at 437.  The district court has considerable discretion in determining the amount of a fee award, and this case offers no red flags of abuse.  The court considered the Governor's arguments, assessed the evidence and the congregants' degree of success, and clearly explained its convincing "reasons for the fee award."  *Id.*

We affirm.